**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| SHANNON STEPHENS, individually, and as Personal Representative of the Estate of KEITH STEPHENS, | ) ) ) ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| NEW SUMMIT COLLECTIVE INC. (f/k/a RAD POWER BIKES, INC.), a Nominal Defendant; SUMMIT COLLECTIVE, INC., a Nominal Defendant; and THE CYCLE JOINT, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

# COMPLAINT

COMES NOW the Plaintiff, Shannon Stephens, individually, and as Personal Representative of the Estate of Keith Stephens, and brings this action against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) and The Cycle Joint, Inc., a manufacturer, distributor, seller, and/or assembler of the defective e-bike at issue in this case. In support thereof, Plaintiff states as follows:

## INTRODUCTION

This lawsuit arises from the wrongful death of Dr. Keith Stephens—a brilliant scientist, husband, and environmental executive—who was killed in a residential fire caused by a defective electric bicycle (e-bike) manufactured by Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) ("Rad Power Bikes"). In its aggressive push for a greater share of the e-bike market, Rad Power Bikes knowingly released into the stream of commerce a product powered by unstable lithium-ion battery technology known to trigger thermal runaway events. These are

not hypothetical risks. Thermal runaway is a violent, self-sustaining reaction that transforms consumer electronics into incendiary devices.

Despite mounting reports of battery fires involving its own products, Rad Power Bikes continued to market its e-bikes as safe and UL certified—misleading consumers into believing that critical safety standards had been met. In reality, the battery pack inside the bike that killed Dr. Stephens had not been UL certified to prevent explosion, fire, or rupture. Rad Power Bikes concealed this fact and knowingly used deceptive marketing to exploit consumer trust while downplaying the dangers posed by its batteries.

The Rad e-bike in question was shipped in a sealed factory box to Dr. Stephens' son just before Christmas 2024. The son brought the unopened box home to Alabama as a holiday gift for his father. To ensure professional assembly, Dr. Stephens delivered the sealed box to The Cycle Joint, Inc., an authorized Rad Power Bikes dealer in Pensacola, Florida.

Dr. Keith Stephens was not a risk-taker. He was a man of discipline and precision. He used the e-bike exactly as Rad Power Bikes intended and instructed. On the morning of January 3, 2025, the e-bike caught fire. The flames erupted in the utility garage of the Stephens home in Covington County, Alabama. Shannon Stephens, his wife of twenty years, was jolted awake by searing heat. Injured and in fear for her life, she fled the house. Dr. Stephens never made it out.

Plaintiff brings this action individually and as the Personal Representative of Dr. Keith Stephens' estate to hold Rad Power Bikes accountable for its reckless, profit-driven conduct. This Complaint asserts claims for wrongful death, strict products liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), negligence, wantonness, fraud and misrepresentation, breach of implied warranty, failure to warn, and loss of consortium—causes of

action rooted in Alabama law and reinforced by a growing national record of destruction caused by Rad's dangerously engineered battery systems.

This is not an isolated event. Rad Power Bikes has been sued for similar fires before. Other homes have burned. Other families have suffered. People have died. The company's knowledge of these fatal hazards was specific and operational. Despite its public declarations of safety consciousness, Rad continued distribution. And a man is dead.

Rad Power Bikes' awareness of the danger is confirmed by its own conduct. After multiple fires involving its e-bikes, the company quietly introduced a new battery enclosure branded "Safe Shield™," claiming enhanced thermal protection and internal safeguards. But Rad never issued a recall. It issued no consumer alerts. It never disclosed that its earlier battery design lacked the UL safety certification necessary to prevent fires, explosions, and battery ruptures. Instead, Rad attempted to bury the danger beneath marketing language—promoting "Safe Shield™" as a routine upgrade rather than what it truly was: a belated fix for a known and deadly fire risk.

The corporate response to this escalating danger has not been reform—it has been deflection and deceptive marketing. Just two months after the fatal fire that seriously injured Plaintiff and took Dr. Stephens' life, Rad Power Bikes' CEO abruptly resigned amid growing public scrutiny and mounting litigation involving e-bike battery fires. The company offered no explanation. Rather than confront the crisis it created, Rad Power Bikes left families like the Stephenses to pay the ultimate price.

This case is not only about compensation. It is about consequences. It is about forcing a corporation that gambled with lives to finally take responsibility for what it unleashed.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

**THE PARTIES AND NOMINAL DEFENDANT STATUS**

2. Plaintiff Shannon Stephens is an adult resident citizen of the State of Alabama and the surviving spouse of Dr. Keith Stephens. She brings this action individually and as the duly appointed Personal Representative of the Estate of Keith Stephens.

3. Defendant **New Summit Collective Inc.** is a corporate entity that designed, marketed, and distributed the e-bike at issue. This entity formerly operated under the name Rad Power Bikes Inc. On March 12, 2026, the United States Bankruptcy Court for the Eastern District of Washington entered an Order officially changing the entity's name from Rad Power Bikes Inc. to New Summit Collective Inc.

4. Defendant Summit Collective Incorporated is a corporate entity and the lead debtor in the jointly administered Chapter 11 bankruptcy proceedings alongside New Summit Collective Inc.

5. Nominal Defendant Status: Defendants New Summit Collective Inc. and Summit Collective Incorporated are named herein strictly as Nominal Defendants. On March 19, 2026, the United States Bankruptcy Court for the Eastern District of Washington entered an Order Approving Stipulation and Granting Relief from the Automatic Stay (Lead Case No. 25-02182-WLH11, Doc. 275).

6. Pursuant to that Order, the automatic bankruptcy stay was explicitly modified to permit Plaintiff to commence and prosecute this civil action to judgment. Under the terms of the

4

court-approved Stipulation, Plaintiff's recovery against these Nominal Defendants is strictly limited to the proceeds of their available liability insurance policies, and Plaintiff expressly seeks no recovery against the general assets, operating accounts, or reorganized equity of the Nominal Defendants' bankruptcy estates. This limitation of recovery applies exclusively to the Debtors' estate assets. Plaintiff specifically reserves all rights to pursue the Nominal Defendants' insurers directly for extra-contractual liability, bad faith, or statutory violations, and further reserves all rights to pursue full recovery against any non-debtor third parties.

7. Defendant The Cycle Joint, Inc. ("Cycle Joint") is a Florida corporation with its principal place of business in Pensacola, Florida. At all relevant times, Cycle Joint operated as an authorized Rad Power Bikes dealer engaged in the sale and assembly of Rad Power Bikes products. Cycle Joint assembled the e-bike that caused the fatal fire underlying this action. Cycle Joint regularly conducts business with consumers in the Alabama–Florida border region and may be served with process through its registered agent or as otherwise permitted by law.

8. Defendants are subject to personal jurisdiction in Alabama pursuant to Ala. R. Civ. P. 4.2(a)(2)(I) and (a)(2)(C) because they transacted business in Alabama and committed tortious acts in Alabama that caused injury to Alabama residents. The subject product was brought into Alabama's stream of commerce, and the resulting harm occurred entirely within this State.

9. Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions

giving rise to the claims occurred in this district, including the fatal fire and death of Dr. Keith Stephens.

### FACTS

10. In December 2024, Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) placed into the stream of commerce a dangerously defective electric bicycle that would ultimately cost Dr. Keith Stephens his life. The bike was purchased by Dr. Stephens' son, Clay Stephens, who was stationed in Florida at the time. It was shipped to Clay in a sealed box a few days before Christmas. Clay brought the unopened box home to Andalusia, Alabama, as a Christmas gift for his father.

11. On or around December 31, 2024, Dr. Keith Stephens personally delivered the unopened box to Defendant The Cycle Joint, Inc., an authorized Rad Power Bikes dealer in Pensacola, Florida, for professional assembly. At no point was the bike tampered with, modified, or assembled outside of The Cycle Joint's facility. It remained in factory condition until The Cycle Joint completed the setup.

12. Dr. Stephens, a respected Ph.D. chemist and environmental manager at PowerSouth, used the e-bike exactly as Rad Power Bikes intended and instructed. The bike was stored and charged indoors in a dry garage using a grounded electrical outlet with no history of malfunction or overload.

13. Within days of assembly, and after ordinary minimal use, in the early morning hours of January 3, 2025, the e-bike's battery ignited while everyone in the house was asleep.

14. The fire erupted in the garage of the Stephens home in Covington County, Alabama, and rapidly consumed the structure.

15. Plaintiff Shannon Stephens was asleep in a front room when she was jolted awake by heat and smoke. Although injured and in fear for her life, she escaped through the front door. Her husband never made it out. He died in the fire.

16. A formal investigation by a nationally recognized fire investigator confirmed that the fire originated from the e-bike's battery pack in the garage.

17. A nationally recognized battery expert has conducted an evaluation of the e-bike battery pack and determined it to be defectively designed. Had Rad Power Bikes incorporated appropriate and available design features, the fire—which originated from the e-bike battery pack—would more likely than not have been contained within the battery pack and prevented from spreading. This event was foreseeable. More importantly, it was preventable.

18. The expert analysis revealed multiple engineering and safety failures that contributed to the deadly fire:

- Rad knowingly selected volatile nickel manganese cobalt (NMC) battery chemistry, which is cheaper and more energy-dense than safer lithium iron phosphate ($LiFePO_4$) alternatives, despite mounting industry warnings about thermal instability.
- The battery pack lacked proper internal spacing and firebreaks between cells, rendering it vulnerable to chain-reaction ignition.
- The product contained no internal fire barrier, suppression materials, or thermal containment systems—features that Rad only introduced after multiple known fire incidents, under a redesigned product line branded "Safe Shield™."
- The subject battery was not independently certified to ensure a minimum level of safety.

19. Rad Power Bikes made a deliberate and dangerous decision to market its electric bicycles as UL certified while knowing that the most critical component—the lithium-ion battery—had never been UL listed. This was not an oversight; it was a calculated deception. UL certification is the industry gold standard for electrical safety, designed to prevent exactly the type of catastrophic battery failure that killed Dr. Stephens. Rad Power Bikes promoted

UL certification language across its website, user materials, and marketing campaigns to induce consumer confidence, knowing full well that the specific battery model installed in the subject bike lacked UL certification. That absence was not merely a technical deficiency—it was a concealed safety failure that directly enabled the thermal runaway event that took Dr. Stephens' life.

20. Rad Power Bikes' knowledge of its battery's unsafe design and lack of UL certification was confirmed by its own actions. After numerous fires involving its e-bikes, Rad quietly began incorporating a new battery feature branded "Safe Shield™," claiming enhanced thermal protection and internal safeguards. But Rad never issued a recall, issued no warning to existing customers, and never admitted that the original battery design posed serious risk of runaway fire. Instead, it characterized the redesigned system as a routine product improvement—not a tacit acknowledgment that its earlier batteries were dangerously defective. "Safe Shield™" was damage control disguised as innovation. It is proof that Rad Power Bikes knew its batteries were unsafe and, rather than come clean, chose to outrun liability—leaving customers like Dr. Stephens in the path of foreseeable and avoidable harm.

21. Dr. Stephens' death was not an accident. It was the direct and proximate result of Rad Power Bikes' reckless prioritization of market share over consumer safety. The fire was the foreseeable consequence of a product Rad knew had ignited before—and did not fix. *See State Farm Fire & Casualty Co., et al. v. Rad Power Bikes, Inc.,* Civil Action No. 2:22-cv-03941-CFK (E.D. Pa.); *Reyna v. Rad Power Bikes, Inc.,* Case No. CGC-23-606005 (Cal. Super. Ct.).

22. At all times, the Rad Power e-bike was in substantially the same condition as when it left Defendants' control. It was never mishandled, abused, or exposed to abnormal conditions.

23. As a direct result of the fire, Dr. Stephens suffered wrongful death, and Plaintiff Shannon Stephens sustained physical injuries, including smoke inhalation, and has suffered—and continues to suffer—extreme emotional distress and the irreplaceable loss of her husband. The trauma of barely escaping the blaze while unable to locate her husband will haunt her for the rest of her life.

## CAUSES OF ACTION
### Count One
### Wrongful Death
### Ala. Code § 6-5-410 — Against All Defendants

24. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

25. On January 3, 2025, Dr. Keith Stephens died as a direct and proximate result of a fire caused by the dangerously defective e-bike and/or its lithium-ion battery, which was designed, manufactured, and placed into the stream of commerce by Defendants.

26. Defendants' conduct—including the design, manufacture, sale, distribution, and/or assembly of a defective and unreasonably dangerous product—constitutes a wrongful act, omission, or negligence under Alabama law.

27. Plaintiff, as the duly appointed Personal Representative of the Estate of Keith Stephens, brings this claim under Ala. Code § 6-5-410 for the wrongful death of her husband and seeks punitive damages sufficient to punish Defendants and deter future similar misconduct.

9

**Count Two**
**Fraud and Misrepresentation**
**Alabama Law — Against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.)**

28. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

29. Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) ("Rad Power") made false and misleading representations of material fact concerning the safety certifications of its electric bicycles, including the specific product at issue in this case.

30. Specifically, Defendant affirmatively represented—through its website, marketing materials, product packaging, and customer support communications—that its e-bikes met or exceeded recognized industry safety standards, including UL certifications.

31. In particular, Defendant implied or explicitly claimed that its e-bike battery systems were UL listed or compliant with UL standards, which are designed to minimize the risk of electrical and thermal events in lithium-ion battery products.

32. These representations were materially false. The specific battery system installed in the subject e-bike was not UL certified at the time of sale and use. Defendant knew this—or was at minimum reckless in failing to verify the truth of its claims—yet continued to market the bike as compliant.

33. These misrepresentations were not innocent mistakes or puffery. They were calculated to induce consumer confidence and increase sales by falsely signaling that Defendant's products had undergone independent third-party safety testing and validation.

34. Plaintiff Shannon Stephens and decedent Dr. Keith Stephens reasonably relied on these representations when accepting and using the e-bike. The UL certification claims conveyed a critical assurance of safety.

10

35. Had Plaintiff known that the e-bike lacked UL certification—and that Defendant had concealed this fact while continuing to sell the product for indoor residential use—she never would have permitted the product in her home.

36. As a direct and proximate result of Defendant's fraudulent misrepresentations and omissions, Plaintiff suffered catastrophic loss. The subject e-bike underwent thermal runaway during routine overnight charging, igniting a house fire that killed Dr. Keith Stephens and left Plaintiff physically and psychologically injured.

37. Defendant's conduct was gross, malicious, and oppressive, and was made with the knowledge that its e-bike's batteries were not UL certified, with the intent to deceive consumers.

38. Plaintiff seeks compensatory and punitive damages to the fullest extent permitted by Alabama law.

### Count Three
### Strict Products Liability
**Alabama Extended Manufacturer's Liability Doctrine — Against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.)**

39. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

40. Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) was engaged in the business of designing, manufacturing, assembling, distributing, and selling electric bicycles with lithium-ion battery packs, including the model purchased by Plaintiff's family. Defendant designed, developed, engineered, tested, manufactured, distributed, marketed, and sold the model that is the subject of this lawsuit, and reasonably expected it to reach the ultimate consumer in the condition it was in at the time of the subject incident.

41. The Rad Power e-bike reached Plaintiff without any substantial change in the condition in which it was sold.

42. The Rad Power e-bike battery pack should have been designed, developed, and engineered to contain and suppress the well-documented risk of lithium-ion battery fires during standard residential charging, particularly in light of prior incidents involving the same product line.

43. Defendant designed, developed, and engineered the e-bike's battery system and electrical components in an unreasonably unsafe manner. Defendant selected volatile NMC battery chemistry, failed to implement proper thermal safeguards between individual cells, and omitted internal fire barriers, suppression systems, and safe containment mechanisms. This design made it reasonably foreseeable that, during ordinary indoor charging, the battery system could undergo thermal runaway—triggering a catastrophic fire in a residential setting.

44. These design defects caused the fatal fire event and rendered the product unreasonably dangerous and unfit for its intended use. This was reasonably foreseeable to, and known by, Defendant.

45. The design and placement of the lithium-ion battery system and charging components in the Rad Power e-bike were so unreasonably and dangerously defective as to expose users and occupants of nearby structures to an extreme risk of fire and injury. Defendant knew or should have known that this design would create a substantial likelihood of a battery-induced fire during routine indoor charging—particularly in residential environments, where a malfunction could prove fatal. Further, Defendant knew or should have known

12

that safer designs and manufacturing components were available that would likely prevent a battery-induced thermal runaway fire.

46. The Rad Power e-bike and battery pack were not designed or manufactured in a reasonably safe or fire-resistant manner. The battery system failed in the dead of night after routine use and triggered a fatal fire that would not have occurred had the battery pack been properly engineered for basic consumer safety.

47. At the time of the fatal fire, the Rad Power e-bike remained in substantially the same design and mechanical condition as when it was sold, assembled, and delivered—unmodified, unaltered, and used precisely as intended. The bike was assembled on December 31, 2024; the fire occurred in the early morning hours of January 3, 2025.

48. The Rad Power e-bike was unreasonably dangerous and defective in both design and manufacture. Its lithium-ion battery system, charging components, and adjacent wiring were designed, engineered, tested, assembled, distributed, and sold in a condition that posed an unacceptable risk of fire during normal household use.

49. As a direct and proximate consequence of the unreasonably dangerous design and/or manufacture of the Rad Power e-bike and its lithium-ion battery system, Dr. Keith Stephens suffered wrongful death and Plaintiff Shannon Stephens sustained injuries, including emotional distress and the loss of her husband, when a fire ignited by thermal runaway during standard charging engulfed their home. Had Defendant properly designed the e-bike's battery system with adequate thermal protection and containment, Dr. Stephens would have survived and Plaintiff would not have suffered the injuries she sustained.

50. Under Alabama law, Defendant is strictly liable for placing an unreasonably dangerous product into the stream of commerce and for the fatal consequences that directly and foreseeably resulted from its use.

## Count Four
### Negligence and Wantonness
### Alabama Law — Against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.)

51. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

52. Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) was negligent and wanton in the design, manufacture, testing, warning, distribution, and/or sale of the subject e-bike, including the design and integration of its lithium-ion battery system, charging components, and associated electrical systems.

53. The Rad Power e-bike and battery should have been designed, developed, and engineered to protect against the risk of thermal runaway battery fire during ordinary household charging and/or routine use. The product was not fire-resistant.

54. Defendant designed, developed, and engineered the e-bike's lithium-ion battery system and charging components in an unreasonably unsafe manner—selecting volatile NMC battery chemistry without incorporating essential safety features such as fire barriers, thermal separation, or suppression mechanisms. These are standard design elements in safer battery systems. Despite being aware of prior thermal incidents involving similar e-bikes, Rad Power failed to adopt these safeguards in the subject product. Only after multiple fires and lawsuits did Rad Power launch a redesigned battery system under the "Safe Shield™" label, implicitly acknowledging the prior design's defects. This sequence of events made it

14

reasonably foreseeable that the battery system could experience thermal runaway during routine indoor charging or routine use, creating a substantial risk of catastrophic fire.

55. The manner in which the subject fire occurred was reasonably foreseeable to, and known by, Defendant.

56. The configuration of the e-bike's battery system, charging components, and surrounding circuitry was so unreasonably and dangerously defective as to expose consumers and their households to an extreme and unacceptable risk of harm. Defendant knew or should have known that this design—lacking internal fire barriers, adequate cell separation, and thermal containment—would create a substantial likelihood of battery-induced fire during ordinary charging or use.

57. The subject e-bike was not designed or manufactured in a reasonably safe manner. Its battery system failed under reasonably foreseeable and entirely ordinary conditions. The fire was not the result of misuse, abuse, or extraordinary circumstances. It was the direct outcome of a design flaw that caused runaway combustion during ordinary use.

58. At the time of the fatal fire, the subject e-bike was in substantially the same mechanical and design condition as when it left the control of Defendant.

59. The subject e-bike was unreasonably dangerous and defective in its design and manufacture. Its battery system, charging components, and adjacent electrical parts were designed, developed, engineered, tested, manufactured, distributed, marketed, and sold in a dangerous and defective condition.

60. As a direct and proximate consequence of the unreasonably dangerous design and manufacture of the subject e-bike and its battery system, Dr. Stephens was killed when trapped in the fire ignited by the product. Had Defendant designed and sold the e-bike with

adequate thermal safeguards and fire prevention mechanisms, Dr. Stephens would have survived. Plaintiff Shannon Stephens, who was asleep in a separate part of the house, suffered serious injuries but managed to escape with her life.

61. As a direct and proximate result of the negligence and wantonness of Defendant, Keith Stephens is deceased, and Plaintiff has suffered and continues to suffer physical and mental injuries.

### Count Five
### Negligence and Wantonness
### Alabama Law — Against Defendant The Cycle Joint, Inc.

62. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

63. Defendant The Cycle Joint, Inc. was negligent and wanton in its assembly of the subject e-bike, which combined and concurred with the design defects of Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) to cause the thermal runaway fire at issue.

64. The Rad Power e-bike and battery pack should have been designed, developed, and engineered to protect against the risk of thermal runaway battery fire during ordinary household use. The product was not fire-resistant.

65. At the time of the fatal fire, the subject e-bike was in substantially the same mechanical and design condition as when it left the control of Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.).

66. As a direct and proximate result of the negligence and wantonness of The Cycle Joint, Inc., combined and concurring with the acts and omissions of the other Defendants, Dr. Keith Stephens suffered wrongful death and Plaintiff has suffered and continues to suffer physical and mental injuries.

16

## Count Six
## Breach of Implied Warranty of Merchantability
**Alabama Law — Against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.)**

67. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

68. Defendant, as a merchant in the business of selling electric bicycles, impliedly warranted that the e-bike was of merchantable quality and fit for its ordinary purpose, including safe indoor charging by consumers.

69. The e-bike and/or its battery were unfit for their intended use and failed under normal operating conditions, rendering the product unmerchantable at the time it left Defendant's control.

70. Dr. Keith Stephens reasonably relied on the integrity of the product and its merchantability, and neither he nor Plaintiff had the opportunity to inspect or discover the hidden defect prior to the fire.

71. Defendant's breach of implied warranty directly and proximately caused the fire and the resulting wrongful death of Dr. Keith Stephens, along with physical and mental injuries to Plaintiff.

## Count Seven
## Failure to Warn
**Alabama Law — Against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.)**

72. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

73. Defendant knew or should have known that the lithium-ion battery and/or charging system used in its e-bike posed a substantial risk of fire, thermal runaway, and explosion—even under normal consumer use.

74. At the time of this incident, Defendants were aware that UL 2771 certification provides evidence that a manufacturer has incorporated sufficient safeguards against fires, short circuits, and thermal runaway events. Defendant promoted this standard on its website and specifically described redesigned batteries as featuring "thermal-resistant technology" that "encapsulates each cell with a unique heat-absorbing resin designed to prevent an accident from escalating."

75. Despite this knowledge, Defendant failed to provide adequate warnings or instructions regarding the dangers associated with charging and routine use of the e-bike, the potential for battery overheating, thermal runaway, or the risk of catastrophic fire resulting from its deficient design.

76. Defendant further failed to include sufficient visual, written, or electronic warnings with the product, and did not issue any recall or advisory notice to alert consumers of the foreseeable danger posed by its lithium-ion battery system.

77. As a direct and proximate result of Defendant's failure to adequately warn, Dr. Keith Stephens was unaware of the latent risks associated with routine use and charging of the e-bike in his utility garage and suffered fatal injuries because of that undisclosed hazard. Plaintiff likewise suffered physical and mental injuries as a direct and proximate result of Defendant's failure to warn.

78. Defendants are liable for failure to warn under Alabama law, including under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) and general negligence principles.

**Count Eight**
**Loss of Consortium**
**Alabama Law — Against All Defendants**

79. Plaintiff incorporates each and every allegation and averment of paragraphs 1–23 above as if fully set forth herein.

18

80. At all times relevant to this action, Plaintiff Shannon Stephens was the lawful spouse of Dr. Keith Stephens and shared with him a close, loving, and committed marital relationship.

81. As a result of Defendants' conduct, Shannon Stephens has suffered the loss of her husband's society, companionship, emotional support, affection, comfort, household services, and the benefits of their marital relationship.

82. The death of Dr. Keith Stephens has caused Plaintiff permanent emotional trauma, grief, and the loss of his irreplaceable emotional and practical contributions to her life.

83. Plaintiff seeks all damages recoverable under Alabama law for loss of consortium, in addition to the wrongful death claim brought on behalf of the estate.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Shannon Stephens, individually and as Personal Representative of the Estate of Keith Stephens, respectfully demands judgment against Nominal Defendant New Summit Collective Inc. (f/k/a Rad Power Bikes Inc.) and The Cycle Joint, Inc. as follows:

1. That this Court enter judgment in Plaintiff's favor on all counts stated herein;

2. That Plaintiff be awarded punitive damages pursuant to Ala. Code § 6-5-410 for the wrongful death of Dr. Keith Stephens in an amount of $25,000,000, or such other amount as the evidence may show and the jury may award, sufficient to punish Defendants and deter similar future misconduct;

3. That Plaintiff be awarded compensatory damages recoverable under Alabama law for Plaintiff Shannon Stephens' individual claims—including physical injury, emotional distress, mental anguish, and loss of consortium—in an amount to be determined by the jury, provided that the total amount demanded in this action is $25,000,000, or such greater

amount as may be supported by the evidence; however, pursuant to the Bankruptcy Court Order (Lead Case No. 25-02182), execution of any judgment against Nominal Defendants New Summit Collective Inc. and Summit Collective Incorporated is strictly limited to the proceeds of available liability insurance policies, with no recovery sought against the Debtors' bankruptcy estates;

4. That all costs of court and litigation expenses be taxed to Defendants;

5. That Plaintiff be granted interest as allowed by law;

6. That Plaintiff be granted leave to amend this Complaint as additional facts become known through discovery; and

7. That Plaintiff be awarded such other, further, and different relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by struck jury on all issues so triable.

Respectfully submitted,

*/s/Nicki L. Lawsen*
Samuel Fisher
Sidney M. Jackson
Patrick Pantazis
Nicki L. Lawsen
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
sf@wigginschilds.com
sjackson@wigginschilds.com
ppantazis@wigginschilds.com

Mark C. McClure (*pro hac vice admission*

20

*pending)*
Law Office of Mark McClure, PS
1103 West Meeker Street, #101
Kent, WA 98032
(253) 631-6484
mark@mcclurelawgroup.com

*Attorneys for the Plaintiff*